**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| N.K.,<br><br>Petitioner,<br><br>-v-<br><br>Markwayne Mullin, *in his official capacity as Secretary, U.S. Department of Homeland Security*, Judith Almodovar, *in her official capacity as Acting Field Office Director, New York City Field Office, U.S. Immigration and Customs Enforcement*, Todd Blanche, *in his official capacity as Attorney General, U.S. Department of Justice*, Raul Maldonado, Jr., *in his official capacity as the Metropolitan Detention Center Warden*,<br><br>Respondents. | 2:26-cv-3844 (NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On June 25, 2026, Petitioner N.K. filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.)[1] The Petition argues that ICE's detention of N.K. without notice and opportunity to be heard starting on March 2, 2026 violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution and that his warrantless arrest was made without probable cause in violation of the Fourth Amendment to the U.S. Constitution. The Petition also argues that N.K.'s detention is governed by 8 U.S.C. § 1226(a) ("Section 1226(a)"), not 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"). The Petition

[1] In its July 1, 2026 Order granting Petitioner's application for a writ of habeas corpus, the Court granted Petitioner's motion to proceed using a pseudonym. (ECF No. 12.)

seeks the following relief: (1) a writ of habeas corpus requiring Respondents to immediately release N.K. or, in the alternative, the provision of a bond hearing either before this Court or an immigration judge with the burden on the government to justify detention by clear and convincing evidence and consideration of alternatives to detention and Petitioner's ability to pay bond, along with an order enjoining Respondents from invoking the automatic stay of any grant of bond; (2) declaratory relief that N.K.'s detention violates the Immigration and Nationality Act and the Fourth and Fifth Amendments to the U.S. Constitution; (3) an order requiring Respondents to return all of Petitioner's belongings, documents, and paperwork in their possession; (4) reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and (5) such further relief as this Court deems just and proper.[2]

Respondents are federal government officials named in their official capacities: (1) Markwayne Mullin, Secretary, U.S. Department of Homeland Security, (2) Judith Almodovar, Acting Field Office Director, New York City Field Office, U.S. Immigration and Customs Enforcement, (3) Todd Blanche, Attorney General, U.S. Department of Justice,[3] and (4) Raul Maldonado, Jr., in his official capacity as the Metropolitan Detention Center Warden.

---

[2] The Petition also seeks an order prohibiting N.K.'s removal from the United States and transfer from Eastern District of New York pending adjudication of the Petition. (Pet. at 38.) The Court has already granted such relief through the issuance of a June 26, 2026 Order to Show Cause, which prohibited Respondents from removing N.K. from the United States or transferring him outside of the Eastern District of New York, Southern District of New York, and District of New Jersey absent further order of the Court. (*See* ECF No. 5.)

[3] At the time the Petition was filed, Blanche served as Acting Attorney General. He has since been confirmed to serve as Attorney General and the caption is amended accordingly.

In response to the Petition, Respondents provided a letter in which they "submit[] that the Court can decide this matter without further briefing or additional hearings." (Response to Order to Show Cause at 3, ECF No. 11.) They concede that this Court "has already ruled on the principal legal issues" in its prior opinions, including *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274 (E.D.N.Y. 2025), *Covelli-Chaparro v. Bondi*, 816 F. Supp. 3d 332 (E.D.N.Y. 2026), *Munoz Caraguay v. Larocco*, 818 F. Supp. 3d 488 (E.D.N.Y. Feb. 4, 2026), *Castellon v. Doe*, No. 2:26-cv-647, 2026 WL 326947 (E.D.N.Y. Feb. 7, 2026), and *Acevedo v. Nassau Correctional Center, et al.*, No. 2:26-cv-0250 (E.D.N.Y. Feb. 11, 2026). (*Id.*) Respondents argue that ICE detained N.K. pursuant to 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (Resp. at 3.) Respondents recognize, however, that the Second Circuit's opinion in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), is "controlling," notwithstanding any potential future appeal, which Respondents were "still evaluating" at the time. (*Id.*)[4] Respondents do not introduce any new arguments to justify their detention of N.K.

On July 1, 2026, this Court granted the Petition in part and ordered N.K.'s release. (ECF No. 12.) In the Release Order, this Court indicated that it would set forth its reasons for granting N.K.'s request for habeas relief in more detail in a forthcoming order. (ECF No. 10 at 2). This Order sets forth the Court's reasoning for granting the Petition in part.

---

[4] In response to Respondents' petition, the Second Circuit denied rehearing en banc on September 25, 2026. *Barbosa da Cunha v. Freden*, __ F.4th ___, No. 25-3141, 2026 WL 2880761 (2d Cir. Sept. 25, 2026). Respondents petitioned the United States Supreme Court for certiorari review, which was granted on October 1, 2026. *Rhoney v. Barbosa da Cunha*, No. 26-104, 2026 WL 2942994 (U.S. Oct. 1, 2026).

## DISCUSSION

### I. Petitioner is Detained Under 8 U.S.C § 1226(a)

N.K., a citizen of Georgia, entered the United States seeking asylum through the southern border in or around Hidalgo, Texas on or around July 3, 2022. (Pet. ¶ 24; Declaration of Christopher Schultz ("Schultz Decl.") ¶ 2.) On August 26, 2022, ICE served N.K. with a Form I-94 and released him on humanitarian parole under 8 C.F.R. § 1182(d)(5). (Schultz Decl. ¶ 9.)[5] After release on humanitarian parole, N.K. moved to New York, applied for asylum, obtained work authorization, and worked as a delivery person for Toyota Prius. (Pet. ¶¶ 24–25.) When ICE detained N.K. on March 2, 2026, he had been living in the interior of the United States for nearly four years and had appeared in immigration court for removal proceedings, which were commenced in or around July 2023.[6]

Respondents' argument that N.K. was seeking admission at the time of ICE's arrest and detention and was therefore subject to mandatory detention under Section 1225(b)(2) is contrary to the facts of this case and the Second Circuit's holding in *Barbosa da Cunha*, 175 F.4th 61. This Court applied *Barbosa da Cunha* in rejecting Respondents' argument that Section 1225(b)(2) applies to a noncitizen arrested in the interior of the United States years after their initial entry into the country in a September 21, 2026 Memorandum and Order granting in part

[5] DHS initially served N.K. with a Notice and Order of Expedited Removal but did not place him in expedited removal proceedings or remove N.K. from the United States. (*See* Schultz Decl. ¶¶ 6–7.) On August 4, 2022, ICE issued, but never served on N.K. or filed with the Executive Office of Immigration Review, a Notice to Appear for immigration proceedings ("NTA"). (*Id.* ¶ 7.)

[6] Removal proceedings against N.K. were initiated only when USCIS filed a Notice to Appear on or around July 25, 2023. (Schultz Decl. ¶ 11; *see also* ECF No. 1-3.) N.K. appeared pro se in immigration court on May 10, 2024 and December 3, 2024. (Schultz Decl. ¶¶ 14–15.)

the petition for a writ of habeas corpus in *Alvarado Sanchez v. Joyce et al.*, No. 2:26-cv-2285, ECF No. 13. The Court incorporates by reference its Memorandum and Order in *Alvarado Sanchez* in its entirety. As was the case for Alvarado Sanchez, ICE's detention of N.K. is governed by the discretionary detention framework set forth in Section 1226(a)—not Section 1225(b)(2). (*See Alvarado Sanchez v. Joyce et al.*, No. 2:26-cv-2285, ECF No. 13 at 4–8.)

**II. Respondents Violated Petitioner's Right to Procedural Due Process**

N.K. argues that he has a liberty interest in being free from detention. Respondents entirely fail to respond to this argument. (*See* Resp.) In prior habeas proceedings in which Respondents invoked Section 1225(b)(2)(A) as the basis for subjecting a noncitizen arrested in the interior of the United States to mandatory detention, Respondents elected to incorporate by reference their arguments made in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.).[7] Respondents have not done so here. (*See* Resp.) Accordingly, before this Court, Respondents do not dispute the notion that N.K. has a liberty interest in being free from detention that was infringed when ICE detained him from March 2, 2026 to July 1, 2026 without notice and an opportunity to be heard.

For the reasons explained by this Court in its prior decision in *Rodriguez-Acurio*, which is also incorporated by reference in its entirety, N.K. has a liberty interest in being free from detention that is afforded procedural due process protection. ICE's detention of N.K. without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

---

[7] For example, in *Alvarado Sanchez v. Joyce et al.*, Respondents invoked Section 1225(b)(2)(A) as the basis for detaining Mr. Sanchez without notice and an opportunity to be heard on February 5, 2026, and incorporated by reference the arguments they asserted in *Rodriguez-Acurio*. *See Alvarado Sanchez v. Joyce et al.*, No. 2:26-cv-2285, ECF No. 9.

The balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to N.K.'s procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, Respondents' detention of N.K. from March 2, 2026 to July 1, 2026 (the date on which this Court ordered his release), violated his Fifth Amendment rights to procedural due process for the same reasons as those set forth in this Court's decision in *Rodriguez-Acurio*.

Here, ICE's detention of N.K. without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures—or lack thereof—used to detain N.K. on March 2, 2026, because Respondents detained him without conducting any individualized inquiry into whether he posed a risk of flight or danger and without providing him a pre-deprivation opportunity to be heard, whether before a DHS or ICE officer or an immigration judge.

Deportation Officer Christopher Schultz attests that on the morning of March 2, 2026, ICE was engaged in surveillance pertaining to an enforcement operation of an unrelated individual when they "encountered" and ran license plate checks on several vehicles, including one that was discovered to be registered to N.K. (Schultz Decl. ¶¶ 16–17, ECF No. 11-1.) N.K was not in the vehicle at the time. (*Id.*) Schultz attests that unnamed DHS officers then "conducted a records check" and "determined that Petitioner was illegally present in the United States and was currently in removal proceedings." (*Id.* ¶ 16.) With only this information, Acting

Supervisory Detention Deportation Officer Michael Damiano "issued a Form I-200, Warrant for Arrest of Alien" and provided Schultz and the other DHS officers with the warrant. (*Id.* ¶ 17.) According to Schultz, he and other unnamed ICE officers then conducted a vehicle stop of N.K. later in the day on March 2, 2026, arrested him, and transported him to 535 Federal Plaza in Central Islip, New York. (*Id.* ¶ 17.) Schultz attests that an arrest warrant was not served on N.K. until *after* he had arrived at 535 Federal Plaza. (*Id.* ¶ 18.) This fact is supported by the face of the warrant, which indicates that it was served on N.K. in *Central Islip*—not in Shirley, New York, where ICE arrested him. (Warrant, ECF No. 11-2 at 18–19.)

At no point did anyone at DHS or ICE conduct *any* individualized inquiry into whether N.K. posed a risk of flight or danger, nor did anyone provide N.K. a pre-deprivation opportunity to be heard. Indeed, neither Damiano nor Schultz spoke to N.K. or knew anything about him other than the fact that he was present in the United States without lawful status before Damiano issued an administrative I-200 arrest warrant and before Schultz and other unnamed ICE officers arrested N.K. during a vehicle stop. (Schultz Decl. ¶¶ 16–17.) Rather, the record reveals that ICE detained N.K. based solely on the fact that he is a noncitizen without lawful status to remain in the United States. This type of status-based detention is not authorized by Section 1226(a) and gives rise to a high risk of an erroneous deprivation of liberty. Indeed, the Second Circuit has recognized that noncitizens in the United States unlawfully "cannot be said, as a categorical matter, to pose a danger to the community or risk of flight . . . ." *Barbosa da Cunha*, 175 F.4th at 95.

Finally, Respondents fail to address any of the *Mathews v. Eldridge* factors, much less any government interests advanced by ICE's detention of N.K. without notice or an opportunity to be heard on the issue of flight risk and dangerousness. Although the Attorney General may

have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, nothing in the record suggests that the DHS officers who arrested N.K. were acting pursuant to that interest when they arrested him on March 2, 2026, without conducting *any* individualized custody determination to assess whether he poses a risk of non-appearance at immigration proceedings or a danger to the community or property. In so doing, Respondents violated the requirements of Section 1226(a) and its implementing regulations and have failed to articulate any governmental interest furthered by proceeding under Section 1225(b)(2)(A)—an inapplicable statutory provision. Rather, Respondents' argument that Section 1225(b)(2) governs N.K.'s detention "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in [*Jennings v. Rodriguez*, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." *Barbosa da Cunha*, 175 F.4th at 96.

Thus, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that N.K.'s detention was required to advance any legitimate government interest—Respondents' detention of N.K. without any notice or opportunity to be heard violated his Fifth Amendment rights to procedural due process. Thus, ICE's detention of N.K. from March 2, 2026 to July 1, 2026 was unlawful, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(2). *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486

(S.D.N.Y. August 13, 2025); *Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025).[8]

**III. Remedy**

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 811 F. Supp. 3d at 319–21.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of N.K. from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that N.K. is not subject to mandatory detention under Section 1225(b). As in

[8] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of N.K., that provision is plainly inapplicable to him. As a factual matter, notwithstanding the initial issuance of a Notice and Order of Expedited Removal, N.K. was never placed in expedited removal proceedings. Moreover, as was the case with *Rodriguez-Acurio*, "the grant of humanitarian parole to [N.K.] moved [him] out of expedited removal proceedings and related mandatory detention" for the reasons addressed at length in *Rodriguez-Acurio*. 811 F. Supp. 3d at 303; *see also id*. 303–04. N.K. is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See id*. at 305–08. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id*. at 298–305. Accordingly, ICE's detention of N.K. from March 2, 2026 to July 1, 2026 was pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

*Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 123 (2020), because it is necessary to ensure that the release of N.K. is not rendered meaningless.

Additionally, N.K. "is entitled to release from the unlawful restrictions on his liberty—which means, in the circumstances here, restoration of" the status quo ante. *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y. Nov. 25, 2025) (ordering the government to release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention] . . . including the ankle monitor and reporting requirements"). Prior to N.K.'s unlawful detention, he was not subject to any release conditions, including but not limited to ICE's electronic monitoring requirements. Accordingly, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, and restoring the status quo ante requires that Respondents release N.K. without any release conditions, including but not limited to any electronic monitoring, such as GPS monitoring.

## CONCLUSION

Accordingly, for all of the reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio, v. Almodovar*, 811 F. Supp. 3d 274 (E.D.N.Y. 2025), and *Alvarado Sanchez v. Joyce et al.*, No. 2:26-cv-2285, ECF No. 13, the Petition is GRANTED in part. As reflected in the Court's July 1, 2026 Order, Respondents were ordered to immediately release N.K. from custody with all of his belongings that were in Respondents' possession, including but not limited to all identification cards, clothing, and money. (ECF No. 12.) Respondents were also ordered to release N.K. without any conditions, including but not limited

to the condition of electronic monitoring, whether GPS monitoring or any other form, into the physical care of his counsel or another mutually agreed upon person no later than 9:00 p.m. on July 1, 2026. (*Id*. at 2.) Respondents confirmed that N.K. was released from ICE custody without any monitoring at approximately 7:00 p.m. on July 1, 2026 (ECF No. 13), and that ICE returned all of N.K.'s property to his counsel on July 2, 2026 (ECF No. 14).

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Counsel for N.K. may file an application for attorneys' fees and costs incurred in pursuing this action by **November 9, 2026**.

The Court concludes that the other arguments set forth in the Petition for granting N.K. the requested relief, including arguments that his arrest violates the Fourth Amendment, are now moot and unnecessary to resolve.

Dated: Central Islip, New York
October 7, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge